UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New Cingular Wireless PCS, LLC

     v.                             Civil No. 11-cv-388-JL
                                        Opinion No. 2012 DNH 046

Town of Stoddard, New
Hampshire, and Zoning Board of
Adjustment of the Town of
Stoddard, New Hampshire

**MEMORANDUM ORDER**

The question in this case is whether the Town of Stoddard's Zoning Board of Adjustment, by granting rehearing of its decision to approve plaintiff New Cingular Wireless PCS, LLC's application to construct a wireless telecommunications facility, violated § 704(a) of the Telecommunications Act of 1996 by failing to act on the application "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). By ruling of the Federal Communications Commission, a local government must act on siting applications like New Cingular's within 150 days—a timeframe that can be extended with the applicant's consent—and failure to act within this time is presumptively unreasonable under § 704(a). In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review, 24 FCC Rcd. 13994 (Nov. 18, 2009) (colloquially referred to as the "Shot Clock Ruling"). Here, New Cingular agreed to extend the 150-day period by three months, and the

Board approved its application within that agreed-upon deadline. Two months after the deadline expired, however, the Board voted to grant rehearing of its approval pursuant to a New Hampshire law providing for rehearing of zoning decisions.  See N.H. Rev. Stat. Ann. §§ 677:2, 677:3.

New Cingular claims that this amounts to a violation of § 704(a), as clarified by the Shot Clock Ruling.  New Cingular further alleges that what it characterizes as the Board's "failure to act" also amounted to (a) an effective prohibition on the provision of wireless services in and around Stoddard and (b) a de facto denial of the application that was unsupported by substantial evidence, both of which constitute further violations of § 704(a).  This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

The Town and the Board (collectively referred to herein as "the Town") have moved to dismiss New Cingular's complaint, see Fed. R. Civ. P. 12(b)(6) arguing that the Board did act on the application within a reasonable time by approving it before the agreed-upon deadline, and that the subsequent decision to grant rehearing is irrelevant.  Alternatively, they argue, the Shot Clock Ruling establishes only a presumption of unreasonableness, and that presumption is overcome by the circumstances surrounding their decisions, as alleged in New Cingular's complaint.  They

2

further argue that the "effective prohibition" and "substantial evidence" claims must be dismissed because such claims may only be premised on the denial of a siting application, and New Cingular's application was never denied.

After hearing oral argument, the motion to dismiss is granted in part and denied in part.  The Shot Clock Ruling contemplates that local governments will resolve siting applications for wireless facilities within its deadline.  But New Cingular's application is not "resolved," because New Cingular may not act in accordance with the initial approval until the rehearing process is complete.  Nor can the court say as a matter of law that the presumption of unreasonableness that the Shot Clock Ruling assigns to a delay of this length is overcome here, as the facts alleged in the complaint suggest that rehearing was a tactic calculated to unduly prolong the application process.  Insofar as the motion seeks dismissal of New Cingular's claim that the Board failed to act on its application within a reasonable time, then, it is denied.  Because, however, claims for effective prohibition and lack of substantial evidence cannot lie unless a local government has denied the plaintiff's application, and the Board has not done so here, the motion to dismiss those claims is granted.

## I.  <u>Applicable legal standard</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  Nonetheless, the "allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," Iqbal, 129 S. Ct. at 1949.  The following summary is consistent with that approach.

## II.  <u>Background</u>

On October 1, 2010, New Cingular filed an application with the Stoddard Zoning Board of Adjustment, seeking permission to construct a wireless communications facility in the town.  As initially proposed, the facility consisted of a 150-foot lattice tower with six panel antennae mounted near the top.  New Cingular

currently has no wireless communications facilities in Stoddard
or the abutting communities, and has a significant coverage gap
throughout Stoddard and those communities.  The proposed facility
would help address that gap.

On November 10, 2010, the Board held an initial public
hearing on the application.  At the hearing, opponents of the
proposed facility raised concerns about the alleged health
effects of radio frequency emissions and the potential impacts of
construction.  New Cingular made efforts to respond to these
concerns, and the Board held a second public hearing on December
15, 2010.  At the second public hearing, opponents raised
additional concerns, such as the aesthetic impact of the proposed
facility and the availability of alternative sites.  New Cingular
again made efforts to address these concerns, and the Board held
a third public hearing on January 5, 2011.  The Board
subsequently held fourth, fifth, and sixth public hearings on
February 15, 2011; April 19, 2011; and May 5, 2011, respectively.
Between hearings, New Cingular conducted numerous tests, and
submitted voluminous additional materials, to address the
concerns raised by opponents and Board members.

As already mentioned, and described in more detail elsewhere
in this order, the Federal Communications Commission ("FCC") has
prescribed a presumptive deadline of 150 days within which local

authorities must act to approve or deny an application to
construct a wireless communications facility.  That 150-day
deadline would have expired on March 1, 2011, but New Cingular
agreed to extend it to May 31, 2011.  On May 25, 2011, the Board
voted 3-2 in favor of granting New Cingular's application, with
some alterations.  Rather than the 150-foot lattice tower
originally proposed, the Board approved construction of a 130-
foot unipole (a single pole with internal antennae), a decision
New Cingular does not contest.

Over the next 30 days, numerous local opponents of the
proposed facility filed motions for rehearing pursuant to N.H.
Rev. Stat. Ann. § 677:2.  Those motions argued, among other
things, that the Board had failed to consider the effect
construction of the tower would have on property values and the
town's "rural character."  On July 21, 2011, the Board met to
discuss these motions.  At the meeting, Board member Fred Ward--
who had been among those most vocally opposed to the facility--
speculated that the rehearing process might "take 20 or 30
meetings" and suggested that the Board engage a new radio
frequency consultant because he considered the previous
consultant "to be less than helpful."  (That consultant had
concluded that other proposed sites for the facility could not
"provide a viable solution" to New Cingular's coverage gap, and

had opined that maps Ward had submitted to support a contrary conclusion were "seriously flawed" and should be disregarded.)

At the close of the meeting, the Board voted to grant rehearing on its approval of the facility.  The following day, all three of the Board members who voted in favor of New Cingular's application resigned, as did all of the Board's alternate members.  The only two members remaining on the Board were Ward and his wife--the two members who had voted against the proposed facility.  On August 1, 2011, the Stoddard Town Administrator issued a notice that "until such time that the Selectmen can appoint a full Zoning Board of Adjustment," all scheduled hearings--including the rehearing on New Cingular's application, which had been set for September 1, 2011--were cancelled.

New Cingular filed this action less than a week later, on August 8, 2011. As of September 7, 2011, the date New Cingular filed its first amended complaint, no successor members had been appointed to the Board and no rehearing date had been scheduled.


III. **Analysis**

A. ***Counts 1 and 4 - unreasonable delay and declaratory judgment***

Counts 1 and 4 of New Cingular's complaint assert claims for unreasonable delay and declaratory judgment, respectively, each

arising from the Board's grant of rehearing on its approval of
New Cingular's application.  At the heart of these claims is 47
U.S.C. § 332(c)(7)(B)(ii).  That provision, part of section
704(a) of the Telecommunications Act of 1996, states:

> A State or local government or instrumentality thereof
> shall act on any request for authorization to place,
> construct, or modify personal wireless service
> facilities within a reasonable period of time after the
> request is duly filed with such government or
> instrumentality, taking into account the nature and
> scope of such request.

The Act itself does not define the "reasonable period of
time" within which a local government must act on an application.
For more than twelve years following the Act's passage, that
phrase was interpreted by various federal courts, which generally
concluded that § 332(c)(7)(B)(ii) "evinces an intent to create a
relatively flexible time frame in which local governments must
act." USCOC of Greater Mo. v. City of Ferguson, 583 F.3d 1035,
1041 (8th Cir. 2009); see also Omnipoint Comm. Enters., Inc. v.
Town of Amherst, 74 F. Supp. 2d 109, 121 (D.N.H. 1998) ("The
prohibition against delay is not absolute and no specific time
period within which to pass on applications is prescribed; the
limit is one of reasonableness under the circumstances.").  This
flexibility, however, engendered some confusion:  for example,
one court concluded that a failure to take action for seven
months was unreasonable, see MetroPCS New York, LLC v. City of

Mount Vernon, 739 F. Supp. 2d 409, 424 (S.D.N.Y. 2010), while another court ruled that a delay more than twice that length was not, see SNET Cellular, Inc. v. Angell, 99 F. Supp. 2d 190, 198-99 (D.R.I. 2000).  Without a clear rule as to when a failure to take action became unreasonable, wireless service providers were left guessing as to when they should seek redress from the courts for local governments' failures to act on applications in a timely manner.[1]  See Shot Clock Ruling, 24 FCC Rcd. at 13998, ¶ 14; 14003-04, ¶¶ 27, 29.

The FCC attempted to remedy this confusion, and to combat unreasonable delays in the zoning process, with the so-called "Shot Clock Ruling."  Id. at 14004-06, ¶¶ 32-34; 14008, ¶ 37.  In that ruling, the FCC "define[d] what constitutes a presumptively 'reasonable time' beyond which inaction on a personal wireless service facility siting application will be deemed a 'failure to act.'"  Id. at 14000, ¶ 19.  After surveying existing state and local requirements for the timely processing of wireless facility siting applications, and taking evidence regarding the typical

---

[1]Because the Act requires a wireless service provider aggrieved by a failure to act to file suit "within 30 days after such . . . failure to act," 47 U.S.C. § 332(c)(7)(B)(v), a provider without a clear idea of when its claim accrued had an incentive under the law to file suit as early as possible to preserve its rights, creating potentially unnecessary litigation for both providers and the local governments forced to defend against such suits.

time periods within which local governments had historically processed them, the FCC found that 90 days is "a generally reasonable timeframe for processing collocation applications" and 150 days is "a generally reasonable timeframe for processing applications other than collocations."[2]  Id. at 14012, ¶ 45. "[I]f state or local governments do not act upon applications within those timeframes," the FCC concluded, "then a 'failure to act' has occurred and personal wireless service providers may seek redress in a court of competent jurisdiction." Id. at 14005, ¶ 32.  Recognizing, however, that "certain cases may legitimately require more processing time," id. at 14007, ¶ 37, the FCC provided that the deadlines could be extended by agreement of the applicant, id. at 14013, ¶ 49, as they were here.  The FCC also clarified that the deadlines were only presumptively reasonable, and that "the State or local authority will have the opportunity, in any given case that comes before a court, to rebut the presumption that the established timeframes are reasonable" based upon the "unique circumstances in individual cases." Id. at 14010-11, ¶¶ 42, 44.

---

[2]A collocation application involves "the addition of an antenna to an existing tower or other structure." Shot Clock Ruling, 24 FCC Rcd. at 14012, ¶ 46.  Applications other than collocations would involve the construction of new facilities or major modifications to existing facilities.  Id. at 14011, ¶ 43. New Cingular's application, which seeks approval to construct a new facility, falls into the latter category.

New Cingular and the Town agree that the Shot Clock Ruling governs this case.[3]  They disagree, though, as to how the ruling applies to the facts alleged in the complaint.  The Town argues that the deadline set forth in the ruling "applies only to the Board's initial review process," not "post-decision rehearings and appeals."  As long as a local government has completed its "initial review process" and issued an initial decision on an application before the deadline, the Town says, it has fulfilled its obligations under the ruling, so a grant of rehearing is of no moment.  New Cingular disagrees with the Town's characterization of rehearing as a "post-decision" process, and instead argues that a local government that grants rehearing has not made any real decision on an application until the rehearing has been concluded.  If--as is the case here--the rehearing process is not concluded before the deadline, New Cingular says, the government has not satisfied the Shot Clock Ruling's mandate.

---

[3]The validity of the Shot Clock Ruling and the FCC's authority to issue it were recently challenged in the Court of Appeals for the Fifth Circuit, which upheld the ruling.  See City of Arlington v. FCC, --- F.3d ----, 2012 WL 171473 (5th Cir. Jan. 23, 2012).  Because the Town's motion assumes that the ruling is valid and controlling, this court also assumes--strictly for purposes of its analysis here--that the Fifth Circuit's holding is correct and that the ruling is entitled to deference as the interpretation of an ambiguous statute by the agency charged with administering it.  See, e.g., WorldNet Telecommc'ns, Inc. v. Puerto Rico Tel. Co., 497 F.3d 1, 5 (1st Cir. 2007) (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984)).

New Cingular has the better argument.  The Shot Clock Ruling contemplates not just that a local government will take some action on an application within the deadline, but that it will "resolve [the] application" before the deadline.[4]  Shot Clock Ruling, 24 FCC Rcd. at 14008, ¶ 38 (emphasis added).  Where a local government grants rehearing under N.H. Rev. Stat. Ann. §§ 677:2 and 677:3, it has not "resolved" the application. Rather, a grant of rehearing--which is not mandatory, but wholly discretionary, see N.H. Rev. Stat. Ann. § 677:2--"suspend[s] the order or decision complained of pending further consideration," id. § 677:3, II.  There are no limits as to which issues may be considered on rehearing, permitting the local government to address the entire application anew if it wishes, and to reach a final decision diametrically opposed to its initial decision. See id. §§ 677:2-677:3.

To separate the "initial review process" and rehearing from one another in the manner the Town suggests, then, is not possible.  Under New Hampshire law, a rehearing is part and parcel of a single review process before a single entity, culminating in a single decision that ultimately resolves the

---

[4]The meaning of the term "act on [a] request" as it is used in 47 U.S.C. § 332(c)(7)(B)(ii) is not before the court.  The parties have instead focused on what action the Shot Clock Ruling requires within its deadlines, and the court therefore does as well.

application with either an approval or a denial.[5]  Furthermore,
where (as here) the review period permitted by state law extends
beyond the deadline set forth in the Shot Clock Ruling, the
ruling makes clear that the applicant may bring suit after the
federal deadline has expired, without regard to the longer time
allowed under state law.  <u>See</u> Shot Clock Ruling, 24 FCC Rcd. at
14012-13, ¶ 50.  Accordingly, the Shot Clock Ruling's 150-day
deadline for the processing of wireless communications facility
siting applications encompasses not only the time it takes a

_____

[5]The Town has cited Va. Code Ann. § 15.2-2232--a statute the
FCC relied upon in finding that a 150-day timeframe for the
processing of siting applications was reasonable, <u>see</u> Shot Clock
Ruling, 24 FCC Rcd. at 14012, ¶ 48 & n.152--in support of its
argument that the New Hampshire rehearing process is not subject
to the Shot Clock Ruling.  Because the Virginia statute includes
an appeal process the FCC did not consider when calculating a
"reasonable" period of time, the Town says, the FCC plainly did
not intend the time allotted for post-decision processes to be
encompassed within the Shot Clock Ruling's deadlines.  But a New
Hampshire rehearing is readily distinguishable from the appeal
process outlined in the Virginia statute.  While an aggrieved
party may appeal under Virginia law as of right, <u>see</u> Va. Code
Ann. § 15.2-2232, B--meaning the local government has no control
whatsoever as to whether or not an appeal occurs--under New
Hampshire law, a local government possesses virtually unfettered
discretion as to whether or not to grant rehearing, <u>see</u> N.H. Rev.
Stat. Ann. § 677:2.  And under New Hampshire law, rehearing
proceeds before the same body that reached the initial decision
on the application.  Id. §§ 677:2 and 677:3.  But an appeal under
Virginia law--as is typical of appeals--is heard by a different
entity than that which reached the initial decision.  Va. Code
Ann. § 15.2-2232, B.

    It is also worth noting that an appeal under Va. Code Ann.
§ 15.2-2232, B "shall be heard and determined within sixty days
from its filing," whereas New Hampshire law does not impose any
limitations on how long a rehearing may take, <u>see</u> <u>infra</u> n.6.

local government to reach an initial decision on an application, but the time it takes to complete the rehearing process set forth in N.H. Rev. Stat. Ann. §§ 677:2 and 677:3 as well.

While this court's interpretation of the Telecommunications Act and the Shot Clock Ruling is based on their language, it is also buttressed by practical considerations. To conclude that a rehearing under New Hampshire law is exempt from the Shot Clock Ruling's deadlines would encourage great mischief. A local zoning board of adjustment, acting in concert with the board of selectmen or other party authorized to move for rehearing under N.H. Rev. Stat. Ann. § 677:2, could easily avoid the Shot Clock Ruling by voting to approve an application within the deadline-- which, under the Town's interpretation, is all the ruling requires--and then grant rehearing. Because New Hampshire law imposes no time limits on rehearings,[6] once rehearing had been granted, the zoning board would be free to take as long as it wished to address the application. This would render the deadline set forth in the Shot Clock Ruling a dead letter, and

------

[6] N.H. Rev. Stat. Ann. § 677:3, II, does provide that after a motion for rehearing is filed, the local governmental body charged with making zoning decisions "shall within 30 days either grant or deny the application, or suspend the order or decision complained of pending further consideration." If, however, that body chooses to suspend its original order and grant rehearing (which is what happened here), the statute does not require that "further consideration" be completed within any set timeframe.

undermine the Shot Clock Ruling's stated goal of "encourag[ing]
the expeditious deployment of wireless broadband services."  Shot
Clock Ruling, 24 FCC Rcd. at 14005, ¶ 32.  These considerations,
though they would not lead this court to ignore clear statutory
or regulatory language to the contrary, illustrate the dangers
inherent in the Town's construction of the Act and the Shot Clock
Ruling.

Of course, a rehearing process that occurs after, or extends
beyond, the Shot Clock Ruling's deadline does not necessarily
violate the Telecommunications Act's directive that local
authorities act upon applications "within a reasonable period of
time."  See 47 U.S.C. § 332(c)(7)(B)(ii).  As already noted, the
deadline set forth in the Shot Clock Ruling is only presumptively
reasonable.  Though a local government's failure to resolve an
application within that deadline entitles the applicant to bring
suit under the Act, the local government will still "have the
opportunity to rebut the presumption of reasonableness."  Shot
Clock Ruling, 24 FCC Rcd. at 14005, ¶ 32.  It is up to the court
to then "determine whether the delay was in fact unreasonable
under all the circumstances of the case."[7]  Id. at 13995, ¶ 4.

---

[7]In fact, many of the concerns the Town has raised in
support of its argument that the Shot Clock Ruling does not apply
to rehearing at all are also factors properly taken into account
when considering whether a delay was reasonable.  For example,
that local governments may have little control over whether a

The Town argues that, even accepting all the facts alleged in the complaint as true, the presumption of reasonableness is rebutted in this case.  Its argument rests principally on the contention that it is per se reasonable to grant rehearing under N.H. Rev. Stat. Ann. §§ 677:2 and 677:3 because rehearing "is not an effort to impede or obstruct," but instead has salutary purposes.  It points out, for example, that rehearings afford local governments the opportunity to correct their own errors, oftentimes giving rise to decisions supported by a stronger record and more substantial reasoning, and saving all parties involved from a potentially unnecessary appeal.  See McDonald v. Town of Effingham, 152 N.H. 171, 174 (2005).

Be that as it may, the court cannot agree that the Shot Clock Ruling's presumption of unreasonableness is rebutted whenever rehearing is granted under N.H. Rev. Stat. Ann. §§ 677:2 and 677:3.  While a rehearing can undoubtedly serve legitimate goals, it does not follow that a local government always exercises its discretion to grant rehearing with such goals in mind, or that rehearing is never calculated "to impede or

---

request for rehearing is filed, and may need to allow at least three months for a rehearing to occur, are both circumstances that bear upon the reasonableness of a delay.  Indeed, the Shot Clock Ruling specifically identifies such "reasonable, generally applicable procedural requirements" as the type of "unique circumstances" that affect this inquiry.  Shot Clock Ruling, 24 FCC Rcd. at 14011, ¶ 44.

obstruct" in a way prohibited by the Telecommunications Act.  It is not inconceivable that a local government hostile to the construction of a wireless communications facility could grant rehearing as a means of unduly prolonging the application process and creating another obstacle for the applicant to overcome.

In any event, there is nothing in either § 704(a) or the text of the Shot Clock Ruling that makes an intent to "impede or obstruct" an essential element of unreasonable delay.  In other words, even where the local government's reasons for granting rehearing are laudable, the delay that results is not necessarily reasonable.  "At some point, acts such as raising additional procedural hurdles well after the process has begun and providing expansive opportunity for repetitious public comment can create an unreasonable delay."  Omnipoint Commc'ns Enters., Inc. v. Town of Amherst, 74 F. Supp. 2d 109, 122 (D.N.H. 1998) (DiClerico, J.); see also MetroPCS New York, LLC v. City of Mount Vernon, 739 F. Supp. 2d 409, 424 (S.D.N.Y. 2010) (local government violates Telecommunications Act "by repeatedly requesting unnecessary information and belaboring issues already resolved").

The allegations of the complaint (which the Town hardly addresses) suggest that the Board's grant of rehearing was a direct attempt to raise "additional procedural hurdles," to provide "expansive opportunity for repetitious public comment,"

17

or both.  New Cingular alleges that its proposed facility faced
vocal opposition from the very beginning, and among the most
vocal opponents was at least one member of the Board itself.  The
Board held six public hearings on the application, requiring New
Cingular to submit a great deal of additional evidence.  Each
time New Cingular did so, however, the facility's opponents
(including Board members) raised additional concerns that it was
then required to address.  Furthermore, after persuading New
Cingular to agree to an extension of the Shot Clock Ruling's
deadline, the Board waited almost until the eve of the extended
deadline to issue a written decision.  Two months later,
however--and five months after the Shot Clock Ruling's
presumptively reasonable 150-day deadline had expired--the Board,
having received multiple requests for rehearing from opponents of
the facility (who again raised previously unaddressed issues),
suspended its decision by granting rehearing.  This left New
Cingular's application in a state of limbo until the completion
of the rehearing process--which, as already discussed, is
potentially indefinite, and which one Board member speculated
could require another "20 or 30 hearings."

The Board's pattern of delay in issuing a final decision on
New Cingular's application, coupled with its apparently unlimited

18

willingness to consider the ever-growing list of objections from the facility's opponents, suggests an unreasonable delay under § 704(a) and the Shot Clock Ruling.  While it is certainly possible that the Board was simply "address[ing] the application in a conscientious and responsible manner," as the Town argues, that is not the only permissible inference from the facts alleged,[8] and, in any event, conscientiousness is not necessarily incompatible with unreasonable delay, as just discussed.  Because New Cingular has plausibly stated a claim for unreasonable delay under the Telecommunications Act, the Town's motion to dismiss Counts 1 and 4 of New Cingular's complaint is denied.

**B.    *Counts 2 and 3 - effective prohibition and lack of substantial evidence***

Counts 2 and 3 of New Cingular's complaint are premised on the theory that the Board's failure to resolve its application within the agreed-upon deadline violated both 47 U.S.C. § 332(c)(7)(B)(i)(II), which provides that "[t]he regulation of the placement, construction, and modification of personal wireless

---

[8]The resignation of a majority of the Board's members (and all of its alternate members) immediately following the grant of rehearing could also suggest that the Board's delay in acting was attributable to causes other than a conscientious and thorough evaluation of the merits of the application.  While the court is skeptical of New Cingular's attempt to argue that those individual members' resignations are actions attributable to the Board itself, the mass resignation is relevant insofar as it may shed light on the Board's motivations for its prior actions.

19

service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services," and 47 U.S.C. § 332(c)(7)(B)(iii), which requires that "[a]ny decision by a State or local government or instrumentality thereof to deny" an application to construct a wireless communications facility be "supported by substantial evidence contained in a written record."  The Town argues that for a plaintiff to state a claim under either provision, its application must have been denied by the local government.  Because the Board never denied New Cingular's application, it says, these provisions are inapplicable.  The court agrees.

The plain language of the "substantial evidence" provision, § 332(c)(7)(B)(iii), requires that the local government make a "decision . . . to deny" the application.  Thus, when the plaintiff's application has not been denied, a claim under this provision does not lie, as a number of courts have ruled. See, e.g., N.Y. SMSA Ltd. P'ship v. Town of Riverhead, 45 Fed. Appx. 24, 27 (2d Cir. 2002); Masterpage Commc'ns, Inc. v. Town of Olive, 418 F. Supp. 2d 66, 80-81 (N.D.N.Y. 2005); Nextel Partners of Upstate N.Y., Inc. v. Town of Canaan, 62 F. Supp. 2d 691, 697 (N.D.N.Y. 1999).  Similarly, although § 332(c)(7)(B)(i)(II)'s "effective prohibition" provision is not nearly as clear on its

face, the court of appeals has read it to require a showing that,
inter alia, the plaintiff's application was denied.  Town of
Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 14 (1st
Cir. 1999).  A claim for effective prohibition is likewise not
ripe where the local government has not denied the application.
See Cox Commc'ns PCS, L.P. v. City of San Marcos, 204 F. Supp. 2d
1272, 1277 (S.D. Cal. 2002).

New Cingular argues that although the Board never denied its
application outright, the Board's failure to act constituted a
"functional" or "de facto" denial of the application.  In support
of this proposition, it relies upon Tennessee ex rel. Wireless
Income Properties, LLC v. City of Chattanooga, 403 F.3d 392 (6th
Cir. 2005) and Sprint Spectrum L.P. v. Town of Durham, No. 97-
305-JD, 1998 WL 1537756 (D.N.H. Aug. 27, 1998).  But the
defendants in those cases did not simply fail to resolve the
application, as the Board allegedly did here.  Rather, in City of
Chattanooga, the defendant specifically informed the plaintiff
that its applications did not comply with local ordinances, and
"indicated that no further action would be taken on the
applications unless [the necessary] changes were made."  403 F.3d
at 398.  Reasoning that this amounted to an announcement that
the plaintiff's "applications, absent amendment, would not be
granted," the court in that case concluded that the defendant

had, in fact, rendered a decision denying the applications. Id. at 398-99. Similarly, in Town of Durham, the defendant declared that recent actions by the Town Council had caused the plaintiff's original application to become moot, and took the position that in order to construct the proposed wireless communications facility, the plaintiff would need to submit a new application. 1998 WL 1537756 at *2-3.

Here, by contrast, the Board never informed New Cingular that no further action would be taken on its application or that it would need to submit a new application. In fact, in granting rehearing, it indicated just the contrary--that further action would be taken on New Cingular's original application. City of Chattanooga and Town of Durham are therefore inapposite. This is not to say that a failure to act on an application cannot ever, under any set of circumstances, amount to an effective denial of the application. But if such circumstances exist, they are not presented by the allegations of New Cingular's complaint.

Because the Board did not render a final decision denying New Cingular's application, New Cingular's claims under 47 U.S.C. §§ 332(c)(7)(B)(i)(II) and 332(c)(7)(B)(iii) are premature, and must be dismissed.

22

IV.  **Conclusion**

For the reasons set forth above, the defendants' motion to dismiss[9] is GRANTED as to Counts 2 and 3 and DENIED as to Counts 1 and 4.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 16, 2012

cc:  Anne Robbins, Esq.
     Stephen D. Anderson, Esq.
     Jeffrey C. Spear, Esq.
     James P. Bassett, Esq.

---

[9]Document no. 14.

23